UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. *Anne E. Thompson* |
| v. | : | Crim. No. *20-109* RECEIVED |
| JOHN DOUGHERTY | : | 18 U.S.C. § 371 |

*JAN 3 1 2020*

*AT 8:30_____M*
*WILLIAM T. WALSH, CLERK*

### INFORMATION

The defendant having waived in open court prosecution by Indictment,
the United States Attorney for the District of New Jersey charges:

### (Conspiracy to Violate the Travel Act)

1.    At all times relevant to this Information:

A.    Defendant JOHN DOUGHERTY ("defendant DOUGHERTY") resided
in Keyport, New Jersey.

B.    Individual 1 was a resident of New Jersey.

2.    From in or about January 2011 to in or about October 2017, in the
District of New Jersey and elsewhere, defendant

JOHN DOUGHERTY

did knowingly and intentionally conspire, combine, confederate, and agree with
Individual 1 to use and cause to be used facilities in interstate commerce with
the intent to promote, manage, establish, and carry on, and facilitate the
promotion, management, establishment, and carrying on of an unlawful activity
– namely, a business enterprise involving gambling, contrary to Chapter 37 of
Title 2C of New Jersey Statutes Annotated (N.J.S.A. 2C:37-2) – and thereafter to

1

perform acts to promote, manage, establish, and carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3).

### Goal of the Conspiracy

3.     It was a goal of the conspiracy that defendant DOUGHERTY and Individual 1 would use and cause the use of a private or commercial interstate carrier, wire facilities, and other facilities in interstate commerce to promote, manage, establish, carry on, and facilitate the unlawful activity of a business enterprise involving gambling.

### Manner and Means of the Conspiracy

4.     It was part of the conspiracy that:

A.     defendant DOUGHERTY, acting as Individual 1's agent for their gambling business and with Individual 1's knowledge and assistance, was given access at various times to websites that were used to conduct sports betting;

B.     as Individual 1's agent, defendant DOUGHERTY had his own group of bettors ("defendant DOUGHERTY's bettors") who, with Individual 1's knowledge and assistance, were given access to a website to conduct sports betting with their own usernames and passwords;

C.     while defendant DOUGHERTY was in New Jersey, with Individual 1's knowledge and assistance, defendant DOUGHERTY accessed a website used by defendant DOUGHERTY's bettors, some of whom were located outside of New Jersey, to track their gambling activity;

D.     defendant DOUGHERTY and Individual 1 used cell phones to communicate with each other through phone calls and by text messages;

E.     at various times, Individual 1 changed the cell phone number that he used to communicate with defendant DOUGHERTY;

2

F.     Individual 1 referred to himself in text messages that he sent to defendant DOUGHERTY not by Individual 1's actual name, but by a code name;

G.     while defendant DOUGHERTY was in New Jersey, he used his cell phone to communicate with defendant DOUGHERTY's bettors, some of whom were located outside of New Jersey, through phone calls and by text messages;

H.     defendant DOUGHERTY used money provided by Individual 1 to pay bets won by defendant DOUGHERTY's bettors, some of whom were located outside of New Jersey;

I.     defendant DOUGHERTY collected money from defendant DOUGHERTY's bettors, some of whom were located outside of New Jersey, for bets they lost and then met with Individual 1 in various locations in New Jersey to share that money with Individual 1; and

J.     while defendant DOUGHERTY was in New Jersey, he and Individual 1 used and caused to be used a facility in interstate commerce, namely, a private or commercial interstate carrier, to deliver and receive money owed to or by defendant DOUGHERTY's bettors as a result of their gambling activity.

Overt Acts

5.     In furtherance of the conspiracy and to effect its object, the following overt acts were committed in the District of New Jersey and elsewhere:

A.     On or about January 18, 2017, defendant DOUGHERTY received a text message from Individual 1: (1) identifying himself not by his actual name, but by a code name and (2) informing defendant DOUGHERTY that the text message was from a new cell phone number that Individual 1 was using.

B.     On or about February 12, 2017, defendant DOUGHERTY used his cell phone to send Individual 1 the following text messages about one of

3

defendant DOUGHERTY's bettors who was located outside of New Jersey ("Individual 2"):

| TEXT MESSAGE # | TEXT MESSAGE |
|---|---|
| 1 | "Something is wrong with him winning like this. …[Individual 2] doesn't pay me 5 k settle up last week, I text him again about it and never replies…. now he's up" |
| 2 | "big and I'm sure expects it on time. I'm very annoyed obviously." |

C.     On or about February 12, 2017, defendant DOUGHERTY used his cell phone to send Individual 1 a text message that asked, in substance, that Individual 1 check if bets placed on a website under Individual 2's username and under a different username "are coming from same computer/ip address."

D.     On or about February 13, 2017, Individual 1 responded to defendant DOUGHERTY in a text message stating, "Just saw final numbers. Wtf. I have a call in to" an individual who assisted in operating the website that Individual 2 used to conduct sports betting.

E.     On or about February 27, 2017, defendant DOUGHERTY and Individual 1 exchanged the following text messages about Individual 2 and another of defendant DOUGHERTY's bettors who was located outside of New Jersey ("Individual 3"):

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|:---:|:---:|:---|
| 1 | DOUGHERTY   CELL PHONE | "[Individual 3] owes 43K . . ." |
| 2 | INDIVIDUAL 1 CELL PHONE | "[Individual 3's] # getting crazy." |
| 3 | DOUGHERTY   CELL PHONE | "[Individual 2] is at 12,500. We settle at 15 now." |

F.     On or about March 7, 2017, defendant DOUGHERTY used his cell phone to send Individual 1 text messages asking, in substance, whether a particular "888" telephone number (the "888 telephone number") was "the agent number for service" for a website that was used to conduct sports betting.

G.     At about the same time that defendant DOUGHERTY sent the above-referenced text messages, on or about March 7, 2017, while he was in New Jersey, defendant DOUGHERTY used his cell phone to call the 888 telephone number.

H.     On or about March 20, 2017, defendant DOUGHERTY and Individual 1 exchanged the following text messages about Individual 2 and Individual 3:

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|:---:|:---:|:---|
| 1 | DOUGHERTY   CELL PHONE | "[Individual 3] over 36....[Individual 2], over 37....." |
| 2 | DOUGHERTY   CELL PHONE | "Getting 35k tomorrow before 10am. [Individual 2] is gold with paying...may want to reconsider lowering his limits. Just a |

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|---|---|---|
| | | thought....don't want him to walk away bei[ng]" |
| 3 | DOUGHERTY   CELL PHONE | ". . . offended. I realize he got lucky though and that week was brutal. Anyway, I can pay you most tomorrow after it comes." |
| 4 | INDIVIDUAL 1 CELL PHONE | "Cool. Keep me posted tomorrow. Drop limits after tournament" |

I.    On or about March 21, 2017, Individual 1 sent defendant DOUGHERTY a text message stating, "Let me know when the eagle has landed. Thanks."

J.    Later that same day, on or about March 21, 2017, in Keyport, New Jersey, defendant DOUGHERTY received a UPS Express Box that was sent by Individual 2 from outside of New Jersey, which contained a substantial amount of cash for gambling losses incurred by Individual 2.

K.    Subsequently, on or about March 21, 2017, defendant DOUGHERTY used his cell phone to send Individual 1 a text message stating, "Eagle has landed. Gonna count now," attached to which was a photograph of the UPS Express Box that was sent by Individual 2.

L.    On or about March 27, 2017, defendant DOUGHERTY and Individual 1 exchanged the following text messages about Individual 3:

6

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|---|---|---|
| 1 | DOUGHERTY CELL PHONE | "[Individual 3] owes 36,347 total. He was getting the no juice last 2 weeks also on plays." |
| 2 | INDIVIDUAL 1 CELL PHONE | "I would accommodate [Individual 3] this time but MUST be paid in full. Cash no checks." |
| 3 | DOUGHERTY CELL PHONE | "Told him what we talked about. Paying cash Friday...all of it. I told him 32 was the number. He said he would get back to me but it sounded good. I guess" |
| 4 | DOUGHERTY CELL PHONE | "like he pretended that he had to run it by someone...." |

M.    On or about March 31, 2017, defendant DOUGHERTY and Individual 1 exchanged the following text messages about Individual 3:

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|---|---|---|
| 1 | INDIVIDUAL 1 CELL PHONE | "[Individual 3] 32? |
| 2 | DOUGHERTY CELL PHONE | "Yes. Hoping" |

N.    Later on or about March 31, 2017, defendant DOUGHERTY used his cell phone to send a text message to Individual 1, stating, "Gonna count. Let's hope," to which was attached a photograph of a brown envelope and cash.

O.    Subsequently, on or about March 31, 2017, defendant DOUGHERTY and Individual 1 exchanged the following text messages about Individual 3:

7

| TEXT MESSAGE # | SOURCE | TEXT MESSAGE |
|---|---|---|
| 1 | DOUGHERTY CELL PHONE | "Wow. Miracles do happen. All here. I even said to him if he couldn't get all of it to roll 2 and give me 30. So he actually gives me 32. I think this is" |
| 2 | DOUGHERTY CELL PHONE | "another bargaining chip down the line knowing him. Lol Lets keep track of his play going forward from week ending 4-2-16 going forward." |
| 3 | INDIVIDUAL 1 CELL PHONE | "Agree 100%. I will keep track too." |

P.     On or about July 30, 2017, defendant DOUGHERTY used his cell phone to send Individual 1 the following text messages about a website that was used to conduct sports betting:

| TEXT MESSAGE # | TEXT MESSAGE |
|---|---|
| 1 | "Hey, as of yesterday I can't access the 'weekly balance' link on agents page. Can't do it on phone or computer. Then I saw a message to call [an individual who assisted in operating a website that was used to conduct sports betting] . . ." |
| 2 | ". . . . Just letting u know in case u don't." |

In violation of Title 18, United States Code, Section 371.

8

### Forfeiture Allegation

1.      As a result of committing the offense charged in this Information,

defendant

JOHN DOUGHERTY

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461, $80,000, constituting proceeds of the offense obtained by

defendant DOUGHERTY.

2.      If any of the property described above, as a result of any act or

omission of defendant DOUGHERTY:

A.      cannot be located upon the exercise of due diligence;

B.      has been transferred or sold to, or deposited with, a third party;

C.      has been placed beyond the jurisdiction of the court;

D.      has been substantially diminished in value; or

E.      has been commingled with other property which cannot be divided
        without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as

incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of

defendant DOUGHERTY up to the value of $80,000.

*Craig Carpenito*

CRAIG CARPENITO
UNITED STATES ATTORNEY

CASE NUMBER:

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

JOHN DOUGHERTY

# INFORMATION FOR

## 18 U.S.C. § 371

CRAIG CARPENITO
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

J FORTIER IMBERT
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-645-2890